UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE 1, an individual; and JOHN DOE 2, an individual,<br><br>    Plaintiffs,<br><br>   v.<br><br>UNITED AIRLINES, INC., an Illinois corporation; ROE 1, an individual; ROE 2, an individual; ROE 3, an individual; and ROES 4 through 50, inclusive,<br><br>    Defendants. | CV 20-05554-RSWL-AGRx<br><br>**ORDER re: Motion to Dismiss Portions of Plaintiffs' Second Amended Complaint** [13] |

Plaintiffs John Doe 1 ("Doe 1") and John Doe 2 ("Doe 2") (collectively, "Plaintiffs") assert seven causes of action against Defendants United Airlines, Inc. ("United"), Roe 1, Roe 2, Roe 3, and Roes 4 through 50, inclusive (collectively, "Defendants"). Before the Court is Defendant United Airlines, Inc.'s ("United") Motion to Dismiss Portions of Plaintiffs' Second Amended

1

Complaint (the "Motion") [13].

Having reviewed all papers submitted pertaining to the Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS in part** and **DENIES in part** United's Motion.

## I. BACKGROUND

### A. Factual Background

Plaintiffs allege the following in their Second Amended Complaint ("SAC"):

Doe 1 is an African American male adult and professional athlete in the NFL who resides in New Jersey. SAC ¶ 1, ECF No. 12. Doe 2 is an African American male adult who resides in Pennsylvania. Id. ¶ 2. United is an airline incorporated in Delaware and headquartered in Illinois. Id. ¶ 4. Roes 2 and 3 (collectively, "Flight Attendants") are two of United's flight attendants. Id. ¶¶ 7-8.

Plaintiffs were passengers on a United flight from Los Angeles to Newark (the "Flight") that was scheduled to depart Los Angeles at 11:15 p.m. Id. ¶ 40. Plaintiffs were seated in the same row as Roe 1 ("Assailant"), a middle-aged Caucasian woman. Id. ¶¶ 6, 41. Assailant boarded the plane after a majority of the plane had already taken their seats, appearing disheveled and unbalanced. Id. ¶ 45. Doe 2 helped Assailant put her bags in the overhead bin. Id.

As Assailant took her seat, she began harassing Doe 1, who was wearing a face mask due to COVID-19. Id.

2

¶ 46. Specifically, Assailant began hitting Doe 1's arm and elbowing him, told him he was frightening, ordered him to move to the front of the airplane, and questioned why he had a mask on. Id. Twenty-five minutes later, Plaintiffs saw Assailant taking an unknown prescription medication. Id. ¶ 47. Doe 2 notified Roe 2, a flight attendant, that Assailant was harassing Doe 1, cursing, and being belligerent and disruptive. Id. ¶ 48. Roe 2 told Doe 2 that he would come to Plaintiffs' row to check on them, but Roe 2 ignored Doe 2's complaint and did not come to check on Plaintiffs. Id.

After Doe 2 returned to his seat, Assailant continued to harass Doe 1 by making unwanted sexual advances toward Doe 1 and engaging in verbal and/or physical conduct of a sexual nature toward Doe 1, including groping and massaging Doe 1's knees and thighs. Id. ¶ 49. Because he was fearful of the perception of being a male victim and the racial stigma of being a young African American male, Doe 1 patiently pleaded for Assailant to stop and removed her hand. Id. Doe 2 then quickly went to Roe 2 to notify him again of Assailant's inappropriate behavior, but Roe 2 ignored Doe 2's second complaint and no actions were taken by United employees. Id. ¶¶ 49-50.

Seventy-five minutes after the Flight's scheduled departure, Assailant intensified her sexual assault and abuse of Doe 1 by staring at him while grabbing and groping his quadriceps and then stroking her hand across

1 his lap toward the inside of his leg near his genitals.
2 Id. ¶ 51.  Doe 1 immediately removed her hand and
3 pleaded with Roe 3, another United flight attendant, who
4 was walking past.  Id.  Roe 3 issued a verbal warning to
5 Assailant, but neither Roe 2 nor Roe 3 took any further
6 action.  Id.
7     Assailant then put her hand through Doe 1's jacket
8 and caressed his chest and pecs, working her way up to
9 his face.  Id. ¶ 52.  While touching Doe 1's face,
10 Assailant grabbed Doe 1's penis and ripped off his face
11 mask.  Id.  Doe 1 jumped up from his seat and complained
12 in front of the entire plane that Assailant was
13 "touching me."  Id.  Feeling embarrassed and
14 uncomfortable, Doe 1 rushed to notify Roe 2, who at the
15 time was in the rear of the plane.  Id.  While Doe 1
16 went to go notify Roe 2, Assailant moved to Doe 1's seat
17 and grabbed Doe 2's leg and groin area.  Id. ¶ 53.
18     When Roe 2 came to Plaintiffs' row, he asked, "is
19 this the same lady?"  Id. ¶ 54.  Assailant admitted she
20 was drinking and had taken pills.  Id.  Roe 2 then moved
21 Assailant to another row, and Plaintiffs believe
22 Assailant was thereafter moved a second time to a row
23 without any other passengers for being disruptive.  Id.
24 United issued a $150.00 voucher each to Doe 1 and Doe 2.
25 Id. ¶ 55.
26 **B.   Procedural Background**
27     On May 18, 2020, Plaintiffs filed their original
28 Complaint [1-1] in the Superior Court of California,

4

1  County of Los Angeles.  Plaintiffs filed their First
2  Amended Complaint ("FAC") [1-3] on May 20, 2020.  United
3  removed [1] the Action to this Court on June 23, 2020.
4      On September 25, 2020, the Court granted in part
5  and denied in part [11] United's Motion to Dismiss
6  Portions of Plaintiffs' FAC.  On October 13, 2020,
7  Plaintiffs filed their SAC [12], alleging seven causes
8  of action: (1) violation of the Unruh Act; (2) sexual
9  assault; (3) sexual battery; (4) battery;
10 (5) intentional infliction of emotional distress;
11 (6) negligence; and (7) negligent hiring, training,
12 supervision, and retention.  See generally SAC.
13     United filed the instant Motion [13] on October 26,
14 2020.  Plaintiffs opposed [14] on November 10, 2020, and
15 United replied [15] on November 16, 2020.

## II.  DISCUSSION

**A.  Legal Standard**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a party to move for dismissal on one or more claims if a pleading fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Fed. R. Civ. P. 8(a).  Dismissal is proper "where the complaint lacks a cognizable legal theory or

5

sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While a complaint need not contain detailed factual allegations, it must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. The plaintiff must allege enough facts "to raise a right to relief above the speculative level." Id. In evaluating a Rule 12(b)(6) motion, a court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the nonmovant. Great Minds v. Off. Depot, Inc., 945 F.3d 1106, 1109 (9th Cir. 2019). A court may generally consider only "the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014).

**B. Discussion**

United moves to dismiss Plaintiffs' first cause of action for violation of the Unruh Act, prayer for treble damages and attorneys' fees, and prayer for punitive

6

damages. Mot. to Dismiss Portions of Pls.' SAC ("Mot.") 2:1-9, ECF No. 13.

### 1. Violation of the Unruh Act

United argues that Plaintiffs' first cause of action for violation of the Unruh Act should be dismissed because they fail to plead specific facts in their SAC to establish that: (a) "Plaintiffs' protected characteristic was a motivating factor for the alleged discrimination"; and (b) "United's actions were intentionally discriminatory." Id. at 9:17-21.

The Unruh Act provides, in relevant part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).

To state a claim for discrimination under the Unruh Act, a plaintiff must allege: (1) that he was denied full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) that his protected characteristic was a motivating factor for this denial; (3) that defendant's denial was the result of its intentional discrimination against plaintiff; and (4) that the defendant's wrongful conduct caused him to suffer injury. See Grundy v. Walmart Inc., No. CV 18-1720-PSG (SKX), 2018 WL 5880914, at *3

1  (C.D. Cal. June 22, 2018) (citing Phillips v. P.F.
2  Chang's China Bistro, Inc., No. 5:15-cv-00344-RMW, 2015
3  WL 4694049, at *7 (N.D. Cal. Aug. 6, 2015)).
4      The Court previously dismissed Plaintiffs' Unruh
5  Act claim on the ground that the FAC lacked
6  nonconclusory allegations as to intentional
7  discrimination.  See Order re: United's Mot. to Dismiss
8  Portions of Pls.' FAC 13:5-14:2, ECF No. 11.  The SAC
9  fails to remedy these deficiencies.  Plaintiffs insert
10 the words "purposefully," "intentionally," and
11 "intentional" into several allegations, see SAC ¶¶ 62,
12 65, 69, but, as United argues and the Court previously
13 informed Plaintiffs, conclusory allegations are
14 insufficient to state a claim.  See Starr v. Baca, 652
15 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a
16 complaint or counterclaim may not simply recite the
17 elements of a cause of action, but must contain
18 sufficient allegations of underlying facts to give fair
19 notice and to enable the opposing party to defend itself
20 effectively.").  Plaintiffs must plead sufficient
21 factual content to "allow[] the court to draw the
22 reasonable inference that the defendant is liable for
23 the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing
24 Twombly, 550 U.S. at 556).
25     Plaintiffs contend that that their "central
26 allegation is that based on Plaintiffs' gender, age, and
27 race, Defendants intentionally and actively ignored
28 Plaintiffs' complaints and that there was a lack of

8

and/or failure to enforce adequate policies and procedures for a proper response to Assailant's sexual assault and harassment," and that the allegations in paragraphs 67 and 68 of the SAC "sufficiently detail how and why the alleged ignoring of Plaintiffs' complaints or pleas for help was racially motivated." Pls.' Opp'n to United's Mot. to Dismiss Portions of Pls.' SAC ("Opp'n") 4:10-5:4, ECF No. 14. Specifically, Plaintiffs point to the following allegations:

> 67. The substantial motiving reason for UNITED, FLIGHT ATTENDANTS, and ROES 4 through 50's, lack of and/or failure to enforce adequate policies and procedures for the proper response to in-flight sexual assaults was PLAINTIFFS' gender, age, and race. Their conduct, taken in its totality, amounted to intentional discrimination based on PLAINTIFFS' age, sex, and race. UNITED, FLIGHT ATTENDANTS, and ROES 4 through 50, overlooked, disregarded, ignored, and took for granted the fact that sexual assaults and harassment can occur to young African American males.
>
> 68. In particular, [Defendants] acted with intentional disregard and indifference, under notice of two young, large and muscular, African American men being sexually assaulted and harassed by an older white lady. Their concurrent and subsequent actions reflected an active decision and thought process reflected in the studies discussed above - i.e. that sexual assault and harassment does not occur to young African American men, let alone to two large, muscular young men at the hands of an older white female. Further, should such harassment and assault occur, it was not worth their time and effort to properly address, resolve, and prevent additional occurrences pursuant to any training and policy and procedures.

SAC ¶¶ 67-68.

While Plaintiffs allege that Defendants were "under notice" that Plaintiffs are young, African American men,

the SAC is devoid of factual allegations to support an inference that Defendants discriminated against them on the basis of their race, age, or gender.  Plaintiffs allege that Defendants were inattentive or even insensitive to Plaintiffs' complaints, but there are no allegations that plausibly suggest this was *because of* any protected characteristic of Plaintiffs.

Plaintiffs attempt to salvage their Unruh Act claim by imputing a belief or attitude—"that sexual assault and harassment [do] not occur to young African American men, let alone to two large, muscular young men at the hands of an older white female"—to Defendants, but Plaintiffs fail to plausibly connect this attitude to these specific Defendants.  Without factual support, Plaintiffs' allegation that Defendants' conduct reflected an attitude purportedly shown in certain studies does not rise above speculation.  Nor does it plausibly allege that Defendants' conduct was motivated by Plaintiffs' race, age, or gender.

Furthermore, the SAC also includes allegations that undercut an inference of intentional discrimination—for example, that Defendants lack and/or fail "to enforce adequate policies and procedures for the proper response to in-flight sexual assaults."  SAC ¶ 66.  Intentional discrimination under the Unruh Act "contemplates 'willful, affirmative misconduct on the part of those who violate the Act' and that a plaintiff must therefore allege, and show, more than the disparate impact of a

facially neutral policy." Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc., 742 F.3d 414, 425 (9th Cir. 2014) (citing Koebke v. Bernardo Heights Country Club, 36 Cal. 4th 824, 853-54 (2005)). Defendants' alleged lack of, or failure to enforce, adequate policies regarding in-flight sexual assaults does not demonstrate the requisite "willful, affirmative misconduct" for an Unruh Act claim. See id.; Young v. Facebook, Inc., 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) (holding that the plaintiff failed to state an Unruh Act claim by alleging that Facebook's customer service system was particularly difficult for her to use due to her disability, where the system "treat[ed] *all* users in the same cold, automated way").

Accordingly, because the SAC lacks factual allegations that give rise to a plausible inference of intentional discrimination, the Court **GRANTS** United's Motion as to the Unruh Act claim.

United further asserts that Plaintiffs' claims for treble damages and attorneys' fees are untenable because they are tied to Plaintiffs' Unruh Act claim. See Mot. 10:24-28, 13:5-6. The Court agrees. Because the SAC fails to state a claim under the Unruh Act, the Court **GRANTS** the Motion with respect to Plaintiffs' prayer for treble damages and attorneys' fees.

2. Prayer for Punitive Damages

United argues that Plaintiffs' prayer for punitive damages should be dismissed as inadequately pled. See

11

Mot. 11:2-12:26. Plaintiffs counter that they "have sufficiently pled facts to support a claim for punitive damages under the corporate employer standard," pointing to their allegations in paragraphs 21-31 and 102-103 of the FAC. Opp'n 7:8-18. The parties also dispute the applicable pleading standard for punitive damages under California Civil Code § 3294. See Opp'n 8:4-26; Reply 6:20-8:5, ECF No. 15.

As an initial matter, "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003) (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996)). Although § 3294 sets the substantive requirements for obtaining punitive damages, the sufficiency of Plaintiffs' pleading is governed by the Federal Rules of Civil Procedure. See Rees v. PNC Bank, N.A., 308 F.R.D. 266, 273 (N.D. Cal. 2015).

Courts are split, however, as to whether conclusory allegations for punitive damages are sufficient to survive a motion to dismiss. Some district courts have followed the proposition stated in Clark v. Allstate Insurance Co. that "[i]n federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." 106 F. Supp. 2d 1016, 1019 (S.D. Cal. 2000); see, e.g., Rees, 308 F.R.D. at 273; Cal. Surgical Inst., Inc. v. Aetna Life &

12

Cas. (Bermuda) Ltd., No. SACV 18-02157-JVS(DFMx), 2019 WL 4138006, at *7 (C.D. Cal. June 10, 2019) ("In the Ninth Circuit, plaintiffs need not plead 'any particularity in connection with an averment of intent, knowledge or condition of the mind.'" (citation omitted)); Inchauspe v. Scan Health Plan, No. 2:17-CV-06011-CAS(JCx), 2018 WL 566790, at *10 (C.D. Cal. Jan. 23, 2018) ("The Ninth Circuit has not extended the Twombly and Iqbal standard to punitive damages allegations. . . . Accordingly, the Court finds that plaintiff's general allegations of 'malice, oppression, or fraud' are sufficient to satisfy federal pleading requirements.").

Other courts have applied the stricter Twombly and Iqbal pleading standard. See, e.g., Rivin v. Patrick K. Willis Co., Inc., No. 2:20-CV-07431-RGK-KS, 2020 WL 8365251, at *3 (C.D. Cal. Dec. 4, 2020) (noting that "courts have pointed out that Clark was decided prior to Iqbal and Twombly, which changed the federal pleading standards."); Polk v. OSI Elecs., Inc., No. CV-14-292-MWF (ASX), 2014 WL 12787639, at *10 (C.D. Cal. Feb. 24, 2014) (applying Twombly and Iqbal to the plaintiff's claims for punitive damages); Kelley v. Corr. Corp. of Am., 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010) (same).

The Court agrees that the pleading requirements set forth in Twombly and Iqbal apply to Plaintiffs' claim for punitive damages. This conclusion is supported by the Supreme Court's discussion regarding the interplay

13

between Rule 9(b) and Rule 8.  In Iqbal, the Supreme Court acknowledged that Rule 9(b) permits "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally[,]" but clarified that "'generally' is a relative term. . . . to be compared to the particularity requirement applicable to fraud or mistake."  556 U.S. at 686.  Rule 9 does not, however, give a plaintiff "license to evade the less rigid—though still operative—strictures of Rule 8." Id. at 686-87. "And Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." Id. at 687.  In short, "Rule 9(b) ensures there is no *heightened* pleading standard for malice, but malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 377 (4th Cir. 2012).

    The Court then considers whether the SAC "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

    California Civil Code § 3294 permits an award of punitive damages for "the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty

14

of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). A corporate employer may be liable for punitive damages based upon acts of an employee if "an officer, director, or managing agent of the corporation" "had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b). Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). Oppression is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2).

Here, Plaintiffs identify members of United's corporate leadership and allege that they "acted willfully and maliciously in conscious disregard of [Plaintiffs'] rights and wellbeing onboard the flight, so as to constitute malice and oppression" under § 3294. SAC ¶ 102. While these allegations related to mental state are alleged generally, they are supported by factual allegations that the specified members of United's corporate leadership "were responsible for ensuring the safety of their passengers" and "failed to

implement and/or enforce adequate policies and procedures for the proper response to in-flight sexual assaults, despite their advance knowledge of a myriad of reports of in-flight sexual assaults." SAC ¶ 103. It is plausible that such conduct constitutes malice or oppression. Accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, the Court concludes that the SAC contains adequate allegations to sustain a prayer for punitive damages at the pleading stage. Accordingly, the Court **DENIES** United's Motion with respect to the prayer for punitive damages.

    3.  <u>Leave to Amend</u>

Leave to amend should be granted with "extreme liberality." <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 972 (9th Cir. 2009); <u>see</u> Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Where a court grants a motion to dismiss, it should generally provide leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). "However, leave to amend need not be granted when 'any amendment would be an exercise in futility[.]'" <u>Hoang v. Bank of Am., N.A.</u>, 910 F.3d 1096, 1103 (9th Cir. 2018) (citation omitted).

Plaintiffs request leave to amend should the Court grant United's Motion. Opp'n 1:15-16. The Court notes

that the SAC fails to rectify the deficiencies identified by the Court in its previous Order. The Court cannot say, however, that amendment would be futile. Therefore, the Court **GRANTS** leave to amend, provided that Plaintiffs can allege, in good faith, additional facts to support their Unruh Act claim and related prayer for treble damages and attorneys' fees.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** United's Motion. The Court **GRANTS** United's Motion **with leave to amend** as to Plaintiffs' first cause of action for violation of the Unruh Act and prayer for treble damages and attorneys' fees. The Court **DENIES** United's Motion as to Plaintiffs' prayer for punitive damages.

Plaintiffs must file their third amended complaint, if any, by no later than **May 7, 2021.**

**IT IS SO ORDERED.**

DATED: April 22, 2021      **/S/ RONALD S.W. LEW**
    **HONORABLE RONALD S.W. LEW**
    Senior U.S. District Judge

17